JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

SHIRON COOPER

## DEFENDANTS

CITY OF JERSEY CITY; JERSEY CITY POLICE DEPARTMENT; SERGEANT JOHN RANSOM; OFFICER PATRICK EGAN, et al.

**(b)** County of Residence of First Listed Plaintiff   HUDSON
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   HUDSON
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

SCHILLER MCMAHON by: THOMAS S. MIRIGLIANO, ESQ.
123 SOUTH AVENUE EAST, WESTFIELD, NEW JERSEY 07090

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government
Plaintiff

☒ 3  Federal Question
*(U.S. Government Not a Party)*

☐ 2  U.S. Government
Defendant

☐ 4  Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☒ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from Another District *(specify)*
☐ 6 Multidistrict Litigation - Transfer
☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. s. 1983, et seq.
Brief description of cause:
Violations of Civil Rights Action against Jersey City Police Department and individual Jersey City police officers

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION**
UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE
05/14/2018

SIGNATURE OF ATTORNEY OF RECORD

## FOR OFFICE USE ONLY

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

Thomas S. Mirigliano, Esq. – NJAID: 038542011
**Schiller McMahon LLC**
123 South Avenue East
Second Floor
Westfield, New Jersey 07090
P: (908) 233-4840
F: (908) 935-0822
Attorneys for Plaintiff, Shiron Cooper

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
**NEWARK DIVISION**

| | |
|---|---|
| SHIRON COOPER, <br><br>        Plaintiff, <br><br> v. <br><br> CITY OF JERSEY CITY; <br> JERSEY CITY POLICE DEPARTMENT; <br> SERGEANT JOHN RANSOM; <br> OFFICER PATRICK EGAN; and <br> JOHN DOES 1-10, <br><br>        Defendants. | CIVIL ACTION NO. |

**COMPLAINT**

Plaintiff, SHIRON COOPER ( "Plaintiff"), with a residence address of 150 Stegman Street,

Apt. B4, Jersey City, New Jersey 07035, by and through undersigned counsel, alleges as follows:

**JURISDICTION STATEMENT AND PARTIES**

1.  This is an action for damages arising out of one or more violations of federal and

state law, and is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth, Fifth, Eighth

and Fourteenth Amendments to the United States Constitution.

2.  This Court has jurisdiction over this action pursuant to the provisions of 28 U.S.C.

§ 1331 and § 1343 in that this is an action to redress violations of Plaintiff's federally protected

1

Constitutional rights. Jurisdiction over the state law claims is founded upon the supplemental jurisdiction of this Court, 28 U.S.C. § 1367.

3.    At all times relevant herein, Plaintiff, Shiron Cooper, is and was a legal resident in the United States, and a resident of Hudson County, New Jersey, and is otherwise *sui juris*.

4.    At all relevant times hereto, Defendant City of Jersey City ("City"), was a municipality duly organized and existing under the laws of the state of New Jersey.

5.    At all times relevant hereto, Defendant Jersey City Police Department ("JCPD"), was a municipal subdivision and arm of the City, located at 207 7th Street, Jersey City, New Jersey 07302.

6.    At all relevant times hereto, Defendant Sergeant John Ransom ("Ransom") was a citizen and resident of New Jersey, acting in his capacity as a JCPD officer and was acting under color of state law. He is sued in his individual and official capacity.

7.    At all relevant times hereto, Defendant Police Officer Patrick Egan ("Egan") was a citizen and resident of New Jersey, acting in his capacity as a JCPD officer and was acting under color of state law. He is sued in his individual and official capacity.

8.    At all times relevant hereto, Defendants John Does 1 through 10, being fictitious and gender-neutral identities and representing unnamed agents, servants and employees of the City and JCPD who violated Plaintiff's rights and/or were a proximate cause or substantial factor of Plaintiff's damages. They are sued in their individual and official capacities.

9.    Defendants Ransom, Egan, and John Does 1 through 10 may be collectively referred to as the "PO Defendants."

10.    All of the above defendants may be referred to as "Defendants" in the aggregate.

11.     At all times relevant hereto, Defendant City and JCPD, acting under color of law, were responsible for the hiring, training, supervision, discipline, retention, termination and promotion of the PO Defendants, inclusive of the defendants named herein.

12.     Each and all of the acts of the PO Defendants and other members of the City and JCPD involved in this incident were performed under the color and pretense of the constitutions, statutes, ordinances, regulations, customs and usages of the United States of America and the State of New Jersey, under the color of law and by virtue of their authority as law enforcement officers for Defendants City and JCPD, and in the scope of their employment with Defendants City and JCPD.

13.     The acts and practices constituting the violations alleged below have all occurred within the State of New Jersey, which is properly within the jurisdiction of the United States District Court in and for the District of New Jersey. Venue in the District of New Jersey, Newark Division is proper because the incident which is the subject of this lawsuit occurred in the State of New Jersey and Defendants are located in this venue. *See* 28 U.S.C. § 1391(b)(1) and § 1391(b)(2).

14.     This action has been commenced within the statute of limitations for all Federal and pendent State causes of action.

15.     Plaintiff has complied with all conditions precedent to the filing of this lawsuit pursuant to Title 59, New Jersey Statutes; all applicable notices have been provided to Defendants.

16.     Plaintiff has retained Schiller McMahon LLC to represent his interests in prosecuting this action, and said law firm is entitled to their reasonable attorneys' fees and costs incurred in connection therewith.

## FACTUAL ALLEGATIONS

17.    The subject incident arises out of the use of unlawful and excessive force against Plaintiff by Ransom, and perhaps others, resulting in serious personal injuries to Plaintiff and the deprivation of his civil rights.

18.    On or about August 6, 2017, Egan, along with several other JCPD Officers known and unknown, established an investigatory surveillance post in the area of Bidwell Avenue and Martin Luther King Drive in Jersey City, New Jersey.

19.    At all relevant times hereto, the above-referenced JCPD officers were assigned to the Street Crimes Unit and under the direct supervision of Ransom. It should also be noted that all of the JCPD officers present were operating in a plainclothes capacity, utilizing unmarked police vehicles equipped with emergency lights and sirens.

20.    At the above time and place, PO Otundo, whom at no time identified himself as a JCPD officer, attempted to stop Plaintiff in the area of Bidwell Avenue and Martin Luther King Drive, Jersey City, based upon the observations of other officers present who alleged that they observed Plaintiff engage in a narcotics transaction.

21.    Plaintiff, fearing that he was going to be the victim of a robbery, began sprinting to safety towards Bergen Avenue.

22.    Other JCPD officers, including Ransom, began pursuing Plaintiff both on-foot and in police vehicles. Ransom, while operating his unmarked, police-issued Dodge Durango SUV (the "SUV") also joined in the pursuit.

23.    Throughout the course of their pursuit of Plaintiff, more than one JCPD officer attempted to block Plaintiff's path using their unmarked police vehicles by dangerously swerving

into Plaintiff's path as he ran. It was at this point Plaintiff realized that it was in fact the police that were chasing him.

24.    Fearing that the vehicles were purposely attempting to strike him as he ran, Plaintiff continued to run across Bergen Avenue and through the intersection of Audubon Avenue and Bergen Avenue, proceeding into the grass portion of Audubon Park seeking safety from the JCPD officers' violent and unlawful actions.

25.    Ransom then drove the SUV onto the curb and proceeded to chase Plaintiff onto the grass portion of the park, driving at a high rate of speed directly at Plaintiff.

26.    Realizing that Ransom was attempting to hit him from behind as he ran, Plaintiff turned towards Defendant Ransom's SUV and raised his hands in the air in an attempt to surrender and peacefully submit to arrest.

27.    Nevertheless, Defendant Ransom ignored Plaintiff's obvious desire to surrender and drove the SUV directly towards Plaintiff, striking Plaintiff and causing him to violently bounce off the hood of the SUV.

28.    In fear for his life, Plaintiff immediately began to run and seek cover behind a tree. Again, Plaintiff put his hands in the air and began to show himself from behind the cover of the tree, while at all times yelling to Ransom: "I give up!"

29.    As Plaintiff stepped out from behind the tree, Ransom accelerated towards Plaintiff, striking Plaintiff head-on causing him to fall to the ground and pull him underneath the SUV as he was run over; as a result, Plaintiff was seriously injured.

30.    The above-described incident was captured on closed-circuit television recording.

31.     Thereafter, Egan, and perhaps others, at the direction of Ransom, intentionally filed false police reports in an effort to conceal the illegality of Ransom's excessive force used against Plaintiff.

32.     On or about January 12, 2018, Ransom was arrested and charged with fourth-degree Assault by Auto, in violation of *N.J.S.A.* 2C:12-1b(3).

33.     On February 9, 2018, pursuant to a plea deal reached with the Hudson County Prosecutor's Office, Ransom plead guilty to Simple Assault, a disorderly persons offense, in exchange for the promised sentence of a conditional discharge with fines. In addition, as part of the plea deal, Defendant Ransom is barred from ever again holding public employment. Ransom was sentenced on March 17, 2018.

34.     Upon information and belief, no disciplinary action was taken against the PO Defendants who filed false reports to protect Ransom, including but not limited to, Egan.

35.     As a direct and proximate result of the intentional, willful, recklessly indifferent and/or malicious acts of Ransom, and perhaps others, Plaintiff has experienced, and continues to experience, severe pain and suffering due to his physical injuries, including mental anguish, mental and emotional suffering, embarrassment, shame, and humiliation, as well as damages to his constitutional rights.

36.     Each of the PO Defendants, including Ransom, acted under color of state law in their official capacity to deprive Plaintiff of his clearly established right to be free from excessive force under the Fourth, Fifth, Eighth and Fourteenth Amendments to the Constitution of the United States and by 42 U.S.C. §§ 1983 and 1988.

37.     Plaintiff is entitled to compensation for the violation of his constitutional rights and the constitutional harms that the Defendants inflicted upon him resulting in his physical injury.

## ADDITIONAL FACTS SURROUNDING LIABILITY

38.     Defendant JCPD is the ultimate policymaking authority for all officially-adopted policies and procedures implemented by employees of Defendant JCPD, including all PO Defendants. Further, it is the entity legally responsible for the hiring, retention, supervision, and training of employees of the JCPD, as well as administering any discipline to said employees.

39.     The JCPD has a long-standing de-facto policy of unlawful profiling as has been acknowledged by New Jersey governors, attorneys general and the local politicians. Upon information and belief, in the past year alone, more than ten (10) current and former JCPD officers have been charged with corruption and/or using excessive force – most, if not all, victims of said excessive force have been African-American or Hispanic. *See* Miscellaneous News Articles, attached hereto as **Exhibit A**.

40.     Defendant JCPD has been placed on notice that there is a pervasive and systematic pattern, custom and practice within the JCPD to unlawfully stop, search, arrest, and use excessive force by rendering vicious beatings to members of the general public – even those who do not resist arrest, including innocent bystanders and those accused of minor criminal infractions – and to make great efforts to use excessive force outside the view of third-party witnesses, and frequently while the person detained is subdued, restrained, or otherwise still in handcuffs.

41.     False reports are rendered, and prosecutions are officially pursued against the victims of these unconstitutional beatings and excessively forceful arrests. Finally, the internal investigations into such allegations of excessive force are almost always a virtual whitewash, as JCPD officers are rarely, if ever, punished for such conduct even when investigations reveal conduct that requires actions to be undertaken against the officer(s) involved to prevent such civil rights and constitutional violations in the future.

42.     Specifically, the notice to the JCPD of the unconstitutional conduct of its officers and employees has occurred through notices of intent to sue, lawsuits, internal affairs investigations, and media reports, yet Defendant JCPD fails to take any remedial action. Upon information and belief, Ransom, a defendant named herein, has reported 27 instances of use of force since 2005, but has never been disciplined for using excessive or unlawful force.

43.     Thus, Defendant JCPD is also on notice of the fact that a systemic and pervasive pattern and practice of excessive force and wrongful and unreasonably forceful arrests exist within the JCPD and that members of the citizenry are the victims of these acts committed by JCPD officers in violation of the Fourth, Fifth, Eight and Fourteenth Amendments. Defendant JCPD officers are allowed and indeed encouraged to commit these wrongful and unconstitutional acts with impunity knowing that no discipline, much less meaningful discipline, will follow for acts of excessive force. Such illegal conduct is ratified and condoned by Defendant JCPD.

44.     PO Defendants Ransom, Egan, and John Does 1 through 10, are comfortable in the knowledge that any act of excessive force that they commit will not result in discipline by Defendant JCPD even when the act of excessive force occurs. Thus, the lack of discipline for acts of excessive force, allowed PO Defendants to wrongfully stop, arrest and commit excessive and unreasonable force against the Plaintiff because PO Defendants knew that there would be no official reprisals for their actions against Plaintiff.

45.     Upon information and belief, the discovery phase of this litigation will further reveal many other instances where Defendant JCPD, by and through its officers and employees, has allowed, condoned, and encouraged a systemic, ratified, and sanctioned policy of acts of excessive and unreasonable force, wrongful arrests and racial profiling only to fail to discipline personnel for such actions, much less properly supervise and train to prevent further abuses.

## CAUSES OF ACTION

## COUNT ONE
### VIOLATION OF 42 U.S.C. § 1983
### (Civil Action for Deprivation of Rights)

46.     Plaintiff re-alleges and re-avers each and every allegation set forth in the preceding paragraphs as if set forth fully herein, and further states as follows:

47.     At all times material hereto, Plaintiff had the constitutional right to be free from the use of excessive and unreasonable force against his person.

48.     The PO Defendants individually and as a group participated and conspired with one another, under color of state law, to deprive Plaintiff of his constitutional rights by, among other things:

    a.   Using excessive and unreasonable force when arresting Plaintiff;
    b.   Depriving Plaintiff of his right to due process;
    c.   Depriving Plaintiff of his right to equal protection of the laws;
    d.   Subjecting Plaintiff to cruel and unusual punishment.

49.     In committing the acts complained of herein, all named Defendants acted under color of state law to deprive Plaintiff of his clearly established constitutionally protected rights under the Fourth, Fifth, Eighth, and Fourteenth Amendment to the United States Constitution.

50.     PO Defendants, including but not limited to Ransom, violated 42 U.S.C. § 1983 by inflicting serious personal injury upon Plaintiff that was grossly disproportionate to the force necessary to arrest Plaintiff in violation of his rights under the United States Constitution.

51.     Ransom, while acting in his capacity as a police officer for Defendants City and JCPD and under color of law, did intentionally use excessive and unreasonable force by forcefully and violently stopping Plaintiff and restraining him.

52.     PO Defendants subjected Plaintiff to further indignities by filing a false report in an effort to assist Ransom in avoiding apprehension and prosecution for his unlawful actions.

53.    The above acts constitute a violation of the Civil Rights Act, 42 U.S.C. § 1983 for violation of one's civil and constitutional rights under color of state law.

54.    As a proximate result of the aforesaid acts by Defendants, Plaintiff has been damaged and has suffered severe emotional injuries including mental distress and anguish.

## COUNT TWO
### VIOLATION OF 42 U.S.C. § 1981
**(Violation of Equal Rights Under the Law)**

55.    Plaintiff re-alleges and re-avers each and every allegation set forth in the preceding paragraphs as if set forth fully herein, and further states as follows:

56.    The acts of the PO Defendants as well as the JCPD and City constitute a violation of the Civil Rights Act, 42 U.S.C. § 1981.

57.    The acts of the Defendants were motivated by were motivated by racial, ethnic, national origin and/or other unlawful animosity and/or by desire to injure, oppress and intimidate the Plaintiff because of his race, ethnicity, national origin, or other protected attribute.

58.    As a proximate result of the above-mentioned acts, Plaintiff has suffered damages including severe emotional distress and mental anguish as well as a deprivation of his rights under § 1981, as well as the Fourth, Fifth, Eighth, and Fourteenth Amendments of the United States Constitution.

## COUNT THREE
### VIOLATION OF 42 U.S.C. § 1985
**(Conspiracy to Violate Civil Rights)**

59.    Plaintiff re-alleges and re-avers each and every allegation set forth in the preceding paragraphs as if set forth fully herein, and further states as follows:

60.     The acts of PO Defendants as well as Defendants JCPD and City constitute a violation of the Civil Rights Act, 42 U.S.C. § 1985, namely a conspiracy to violate the civil rights of Plaintiff based on his race, ethnicity, national origin, or other unlawful basis.

61.     As a proximate result of the above-mentioned acts, Plaintiff has been damaged and has suffered severe emotional distress and mental anguish as well as deprivation of rights under the Civil Rights laws.

### COUNT FOUR
### VIOLATION OF 42 U.S.C. § 1986
### (Failure to Prevent Violations of Civil Rights)

62.     Plaintiff, Shiron Cooper, re-alleges and re-avers each and every allegation set forth in the preceding paragraphs as if set forth fully herein, and further states as follows:

63.     The Defendants had knowledge of the discrimination/violation of constitutional rights perpetrated on Plaintiff and/or other minorities, including Plaintiff, but neglected and failed to prevent said wrongful and illegal acts when they had power to do so.

64.     This neglect, aid and refusal to prevent or rectify is a violation of the Civil Rights Act, 42 U.S.C. § 1986.

65.     As a proximate result of the above-mentioned acts, Plaintiff has been damaged and has suffered severe emotional pain, suffering, anguish and distress and a deprivation of rights under the Civil Rights laws.

### COUNT FIVE
### VIOLATION OF 42 U.S.C. § 1983
### (Negligent Screening, Hiring, Training, Supervising and
### Retention of Dangerous Discriminatory Police Officers)

66.     Plaintiff re-alleges and re-avers each and every allegation set forth in preceding paragraphs as if set forth fully herein, and further states as follows:

67.     Defendant JCPD was negligent in screening, hiring, training, supervising, disciplining and/or retaining the PO Defendants in this matter, who they knew or should have known were dangerous and/or acted in a racially discriminatory manner.

68.     Defendant JCPD is liable for the aforesaid acts both under the doctrine of *respondeat superior* and because it permitted conditions to exist which facilitated and/or permitted such conduct to occur.

**COUNT SIX**
**NEW JERSEY STATE CIVIL RIGHTS ACTION/STATE CONSITITUTIONAL CLAIM**
**(N.J.S.A. 10:6-1, *et seq.*)**

69.     Plaintiff re-alleges and re-avers each and every allegation set forth in the preceding paragraphs as if set forth fully herein, and further states as follows:

70.     The illegal, unconstitutional and discriminatory acts of the Defendants constituted acts of a *de facto* policy to discriminate, use unlawful force and assault Plaintiff. The actions of the Defendants aforesaid also represent a *de facto* policy to deny Plaintiff his due process, equal protection and to be free from excessive force and cruel and unusual punishment. All of these violations contravene Plaintiff's constitutional rights under the New Jersey State Constitution including, but not limited to, Article I, Section 1; Article I, Section 5 – denial of rights; and Article I, Section 7 and the New Jersey Civil Rights Act (N.J.S.A. 10:6-2).

71.     Each individual Defendant was acting at all times in furtherance of his employer.

72.     As a proximate result of the aforesaid conduct, Plaintiff has been damaged, including violation of his civil rights and has suffered severe physical and emotional pain and suffering.

## COUNT SEVEN
## WILLFUL DISREGARD

73.    Plaintiff re-alleges and re-avers each and every allegation set forth in the preceding paragraphs as if set forth fully herein, and further states as follows:

74.    The conduct of Defendants was outrageous, wanton and willful, in reckless indifference to the rights, safety, and interests of Plaintiff, and taken with conscious disregard of their duties and obligations.

75.    Defendants acted with deliberate indifference to the rights of persons in their domain, and Plaintiff, violating Plaintiff's right to freedom from deprivation of liberty without due process of law in violation of the Fourth, Fifth and Fourteenth Amendment to the Constitution of the United States and the Civil Rights Act, 42 U.S.C. § 1986.

76.    As a proximate result of the above-mentioned acts, Plaintiff has been damaged and has suffered severe emotional pain, suffering, anguish and distress and a deprivation of rights under the Civil Rights laws.

## COUNT EIGHT
## ASSAULT AND BATTERY

77.    Plaintiff re-alleges and re-avers each and every allegation set forth in the preceding paragraphs as if set forth fully herein, and further states as follows.

78.    Ransom, and perhaps others, intended to cause a harmful or offensive contact with Plaintiff, and/or an imminent apprehension of such a contact.

79.    Plaintiff was thereby put in such imminent apprehension.

80.    Defendants, individually and/or acting in concert, contacted Plaintiff in a harmful and offensive manner without cause and/or legal justification.

81.     As a proximate result of the aforesaid conduct, Plaintiff has been damaged and has suffered severe emotional pain, suffering, anguish and distress.

82.     As a proximate result of the Defendants' conduct, Plaintiff has been damaged and has suffered severe emotional pain, suffering, anguish and distress.

### PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for relief and judgment against the Defendants, including but not limited to:

1.     An award of compensatory damages and punitive damages against Defendants, together with interest, costs of suit and attorneys' fees; for his personal injuries; pain and suffering; past, present and future medical expenses; attorneys' fees; mental anguish; loss of earning capacity; and loss of capacity to enjoy life; as well as his costs, and all other relief the Court deems just and proper.

2.     A judgment declaring that the JCPD's policy, practice and/or custom of unlawful stops, searches, arrests, and acts of excessive and unreasonable force, wrongful arrests and racial profiling challenged herein are unconstitutional in that they violate the Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution and the Civil Rights Act, 42 U.S.C. § 1986, and the Constitution and laws of the State of New Jersey, and that its implementation, enforcement and sanctioning by JCPD officers is a direct and proximate result of the following policies, practices and/or customs of the JCPD:

    a.  Failing to adequately screen, train and supervise officers;

    b.  Failing to adequately monitor the JCPD officers and discipline those JCPD officers who violate the constitutional rights of residents of the communities they patrol; and

    c.  Encouraging, sanctioning and failing to rectify the JCPD's unconstitutional policies.

3. Issue an order for the following injunctive relief:

    a.  Enjoining the JCPD from continuing its policy, practice and/or custom of unlawful stops, searches, arrests, and acts of excessive and unreasonable force, wrongful arrests and racial profiling;

    b.  Requiring the JCPD to institute and implement improved policies and programs with respect to training, discipline, and promotion designed to eliminate the JCPD's policy, practice and/or custom of unlawful stops, searches, arrests, and acts of excessive and unreasonable force, wrongful arrests and racial profiling;

    c.  Requiring the JCPD to deploy JCPD officers with appropriate and adequate supervision; and

    d.  Requiring an independent overseer to monitor stops, searches, arrests, and acts of force to determine whether reported stops, searches, arrests, and acts of force have comported with constitutional requirements.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of all issues so triable under the law.

## DESIGNATION OF TRIAL COUNSEL

Plaintiff designates the undersigned as trial counsel.

Thomas S. Murigliano, Esq.
Attorney for Plaintiff Shiron Cooper

Dated: **5/14/18**

## **CERTIFICATE OF SERVICE**

**WE HEREBY CERTIFY** that on May 14, 2018, we electronically filed the foregoing with the Clerk of the Court using CM/ECF. We also certify that the foregoing document will be served on all parties either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

Respectfully submitted

By: _____

Thomas S. Mirigliano, Esq.

# EXHIBIT A

**Menu**          Set Weather                    Subscribe

Search

**HUDSON COUNTY**

# Video shows cops kick innocent victim of fiery crash

Updated June 8, 2017 at 10:35 AM;
Posted June 7, 2017 at 2:47 PM

16

## 1.5k
shares

**By Caitlin Mota**
The Jersey Journal

**UPDATE:** Jersey City looks to fire officers who kicked man

*Editor's note: This story has been updated to include a new comment from Hudson County Prosecutor Esther Suarez.*

JERSEY CITY - In a new video of a fiery crash that critically injured a West New York man Sunday night, police officers are seen kicking and dragging the man -- who sources say was a victim in the two-car wreck -- into the roadway.

**1** 

5/7/2018
Case 2:18-cv-09200-KM-MAH    Document 1    Filed 05/14/18    Page 20 of 35 PageID: 20
Video shows cops kick innocent victim of fiery crash | NJ.com

City officials said Wednesday morning they have "serious concerns" about how police handled the pursuit that began sometime around 11 p.m. in the Greenville section of the city and ended about six miles away with an innocent man fighting for his life.

The video, obtained by Univision and shared with The Jersey Journal, shows the 28-year-old man emerge from a burning car with parts of his body covered in flames. He is seen rolling on the ground to put out the flames. At the same time, more than half a dozen officers, many with their guns drawn, surround the man.

At least one cop in the video is seen forcefully kicking him in the head and neck area. Other officers are seen stomping on parts of his body.

Leo Pinkston, 48, has been charged with aggravated assault and eluding in the crash. Police fired multiple shots at Pinkston about a mile down the road before the crash.

Case 2:18-cv-09200-KM-MAH    Document 1    Filed 05/14/18    Page 21 of 35 PageID: 21

"Our investigators have reviewed the video and we believe with certainty that this man is the bystander from West New York who suffered burns, not Leo Pinkston, the individual pursued by police," Hudson County Prosecutor Esther Suarez said in a statement.

A friend of the victim, who asked not to be identified out of respect for the family, said the 28-year-old was driving home from work when he tried to avoid crashing with Pinkston's speeding car.

The victim is still in the hospital "fighting for his life" with multiple broken bones and second- and third-degree burns, the friend said. The victim also has a very swollen face, which his friend said he thought was odd. After seeing the latest video, he is certain the man is his friend.

"It was just shocking," he said. "I didn't think a fire could cause that."

City spokeswoman Jennifer Morrill said the city is concerned about the way the pursuit was handled, and sources say it should have been called off at some point.

"We have serious concerns about the conduct of this pursuit, however, we are reserving judgment until the conclusion of the prosecutor's investigation," said Morrill, who declined to comment specifically on the video.

No cops have been suspended in connection with the chase, Carmine Disbrow, president of the Jersey City Police Officer's Benevolent Association, said. He criticized Public

Safety Director Jim Shea's decision to confiscate <u>new police SUVs from the district's involved in the pursuit.</u>

"As it should be, this entire incident is being fully investigated," said Carmine Disbrow, president of the JCPOBA. "Taking swift action isn't always elegant, but this video clearly shows that the officers acted quickly to extinguish the flames, and pull this man out of harm's way."

Suarez encouraged any other witnesses with additional footage or information on the incident to contact her office.

"I'd like to thank the individual who came forward with this video and I'd like the public to know that we welcome their help," Suarez said. "This video is now part of all the evidence we are considering as we investigate the actions of all individuals who were involved with the events of Sunday night in Jersey City."

*Jersey Journal staff writer Michaelangelo Conte contributed to this report.*

# NEW JERSEY101.5

ON AIR NOW: DEMINSKI & DOYLE                                     LISTEN NOW

HOME | NEWS | EVENTS | ON AIR | LISTEN | INSIDERS | CONTESTS | WEATHER | TRAFFIC | CONTACT | C

LOOK:  NJ 101.5 ON ALEXA     NJ 101.5 FLASH BRIEFINGS     WEATHER     NJ 101.5 APP     GET OUR NEWSLETTER     PODCASTS     BERMUDA CRUISE     BIG JOE TALENT SHOW

TALKING ABOUT

NEW JERSEY'S BE
TO PICK 13

# FOUR JERSEY CITY COPS SUSPENDED AFTER CHASE, VIDEO SHOWS VICTIM BEING KICKED

DAN ALEXANDER | June 12, 2017

SHARE ON TWITTER                    SHARE ON FACEBOOK

GET OUR

Email Address

LATEST POSTS

JERSEY CITY — Four Jersey City police officers have been suspended in connection with a controversial police chase that ended in a fiery crash — and with officers **seen in a video seeming to kick and drag an innocent victim of the incident**.

Jersey City Mayor Steven Fulop on Monday announced four police officers including a lieutenant have been suspended indefinitely without pay, and two deputy chiefs have been transferred.

The suspended officers were identified as Lt. Keith Ludwig, Officer M.D. Khan, Officer Erik Kosinski and Officer Francisco Rodriguez. The deputy chiefs were not identified.

 **Steven Fulop**
@StevenFulop

The actions here are fair. Not every decision is easy but we all must be accountable 4 our actions, Especially those w/public trust twitter.com/njdotcom/statu…
3:32 PM - Jun 12, 2017

18      See Steven Fulop's other Tweets

5/7/2018                                    Four Jersey City cops suspended after chase, video shows victim being kicked

Fulop and Jersey City Public Safety Director James Shea said they had concluded the officers violated several guidelines during the chase, including firing shots from their vehicle at another moving vehicle. New Jersey State Attorney General guidelines state officers should only fire at moving vehicles as a matter of last resort to protect public safety.

Authorities say Leo Pinkston led police on a chase lasting several blocks late on the evening of June 4, and was involved in at least two separate crashes over the course of the pursuit.

It ended when he crashed into a utility pole, which caused a fire that injured Miguel Feliz-Rodriguez, who was driving on Tonnelle Avenue. Hudson County Prosecutor Ester Suarez said after the crash, Feliz-Rodriguez was taken to the Burn Center at St. Barnabas Medical Center in Livingston, where he was listed as being in stable condition as of Thursday night.

Video from the incident surfaced several days later, seeming to show police kicking and dragging a bystander at the end of the pursuit.



Jersey City Mayor Steven Fulop (David Matthau, Townsquare Media NJ)

Suarez has asked people not to rush to judgment, but promised a thorough review of the incident. She said authorities would have to "review over 15 videos containing several hours of evidence, interview more than 20 witnesses and conduct a ballistics investigation into multiple shootings."

She said after Fulop's announcement that the investigation is ongoing and results are pending.

Carmine Disbrow, president of the Jersey City Police Officer's Benevolent Association, has said he believes the video shows officers actually trying to help the man in question.

"Taking swift action isn't always elegant, but this video clearly shows that the officers acted quickly to extinguish the flames, and pull this man out of harm's way," he said last week.

Fulop previously said what he saw in the video was "unacceptable" and said "We'll pursue termination and  criminal charges as appropriate.

Patrick Culligan, president of the NJ State Policemen's Benevolent Association, said of Fulop's announcement: "We don't represent the Jersey City guys, but I think it's a pretty terrible rush to judgement. I have a lot of faith in Prosecutor Suarez but I think that she could make that decision. Another rush to judgment. Disappointing that politicians feel like they should be inserting themselves into police cases. Par for the course in 2017 I guess."

Feliz underwent surgery for burns last week and remains hospitalized.

*David Matthau, Adam Hochron and the Associated Press contributed to this  report.*

*Contact reporter Dan Alexander at **Dan.Alexander@townsquaremedia.com**.*

**More from New Jersey 101.5:**

Spadea — Heroic Jersey City cops under fire from Mayor Fulop

5/7/2018
Case 2:18-cv-09200-KM-MAH    Document 1    Filed 05/14/18    Page 25 of 35 PageID: 25
Jersey City settles police brutality lawsuit for $14,500 | NJ.com

Menu          Set Weather                                    Subscribe

                                                             Sign In  Search

HUDSON COUNTY

# Jersey City settles police brutality lawsuit for $14,500

Posted September 6, 2016 at 10:26 AM

jcpd.JPG

Jersey City police were accused in a lawsuit of assaulting a Jersey City man on Nov. 1, 2012. The city recently settled the suit for $14,500. *(Journal file photo)*

21

## 56
shares

By **Ron Zeitlinger**
The Jersey Journal

1 🔔

Jersey City has agreed to pay a city resident $14,500 to settle a police brutality lawsuit the man filed two years ago, court records show.

5/7/2018                                    Jersey City settles police brutality lawsuit for $14,500 | NJ.com

In a federal lawsuit initially filed Sept. 3, 2014, Tevin Henry accused more than a dozen police officers of assaulting him after they ordered him to stop while he was riding a bicycle on Winfield Avenue at 9:30 p.m. on Nov. 1, 2012.

Henry said in his lawsuit that he dropped the bike and put his hands in the air when the police officers ordered him to stop. The lawsuit also says the police officers "pushed (Henry's) face into the ground and began hitting him with flashlights and night sticks in the face."

## TEVIN HENRY AMENDED LAWSUIT

Police also "twisted his ankles and kicked and stepped on his chest," Henry said in the lawsuit." Henry said he was handcuffed and accused of carrying a gun, but when he was searched police found only a flashlight and they smashed it, the lawsuit said.

Jersey City officials did not immediately respond to a request for comment.

The settlement, first reported by John Paff on his njcivilsettlements.blogspot.com website, was approved by the Jersey City City Council -- by a 9-0 vote -- at its Aug. 17 meeting.

The lawsuit alleged excessive force, brutality and assault and battery by police. The lawsuit also said Henry suffered "severe and grievous permanent injuries," but it did not specify the injuries.

According to federal electronic court records, the Jersey City Police Department is a defendant in 16 cases.



Registration on or use of this site constitutes acceptance of our **User Agreement** and **Privacy Policy**

© 2018 New Jersey On-Line LLC. All rights reserved (**About Us**).
The material on this site may not be reproduced, distributed, transmitted, cached or otherwise used, except with the prior written permission of New Jersey On-Line LLC.

**Community Rules** apply to all content you upload or otherwise submit to this site.

▷ **Ad Choices**



5/7/2018                          Jersey City to pay $45K to settle police brutality claim | NJ.com

**Menu**          Set Weather                                    Subscribe
                                                                        Search

# Jersey City to pay $45K to settle police brutality claim

Updated June 9, 2017 at 1:07 PM;
Posted June 9, 2017 at 11:24 AM



The Jersey City council is scheduled to approve a $45,000 settlement to end a police brutality lawsuit filed in 2012. (Reena Rose Sibayan | The Jersey Journal)

8                              **19**
                                shares

By **Terrence T. McDonald**, tmcdonald@jjournal.com
The Jersey Journal

JERSEY CITY -- A man who accused Jersey City cops of beating him during a 2011 party on Martin Luther King Drive is set to receive $45,000 to drop his federal lawsuit against the city.

Michael Wheeler was arrested after police officers responded to the event on a report of there being people with handguns nearby. Wheeler, who said he was working security at the party, alleged a group of four officers grabbed him,

punched him, kneed him in the gut and hit him with a baton when he wouldn't leave the scene.

The officers said there was physical contact but argued they did not use excessive force.

Wheeler suffered a fractured skull and drifted in and out of consciousness for up to six hours while he was at the hospital following the beating, according to a March 14, 2016 decision by U.S. District Judge Madeline Cox Arleo, who allowed some of Wheeler's claims to move forward and dismissed others. Some of the incident was caught on video that gave "credence to plaintiffs' claims of excessive force," the judge said.

Wheeler and his wife initially filed the lawsuit in December 2012. The matter was set for trial in early May when both parties settled.

The City Council is scheduled to approve the $45,000 settlement on Wednesday.

ADVERTISING

Learn more



This week the city's police force faced new accusations of police brutality following a six-mile pursuit Sunday night that ended in a car crash on Tonnelle Avenue.

A video surfaced Tuesday showing police officers kicking a man who had climbed out of a burning car. The man turned out not to be Leo Pinkston, the man police say led them on the chase, but Miguel Feliz, a West New York man whose car Pinkston is accused of crashing into at the end of the pursuit.

Feliz remains hospitalized in stable condition.

*Terrence T. McDonald may be reached at tmcdonald@jjournal.com. Follow him on Twitter @terrencemcd. Find The Jersey Journal on Facebook.*

5/14/2018                    Brutality lawsuit against Jersey City police, tavern moving forward | NJ.com

**Menu**          Set Weather                                                    Subscribe
                                                                                        Search

# Brutality lawsuit against Jersey City police, tavern moving forward

Updated Jul 17, 2017;
Posted Jul 15, 2017



Hector Mejias, 36, of Jersey City.
Photo taken on September 30,
2012. Michael Dempsey | The
Jersey Journal

4                                               **72**
                                                shares

**By Caitlin Mota**
The Jersey Journal

The Jersey City Police Department and a former mayor's son are at the center
of a multi-million dollar police brutality lawsuit that alleges a man was beaten
so viciously he suffered permanent brain damage.

The allegations stem from a 2012 assault outside Healy's Tavern on Newark
Avenue involving off-duty police officers and the bar's owner, Jeremiah S. Healy,
a Jersey City firefighter and son of then-Mayor Jerramiah Healy.

Hector Mejias is seeking damages for pain, suffering and emotional distress for
the Sept. 29 incident.

Brutality lawsuit against Jersey City police, tavern moving forward | NJ.com

Motions to dismiss the lawsuit were denied by an Essex County Superior Court judge in June. The case was transferred out of Hudson County because at least one person listed in the complaint has a relative working in the Hudson courthouse. The next hearing in the case is Aug. 14.

According to the lawsuit, Mejias was driving home when he saw a group near the bar beating another man in the middle of the street. Mejias told the attackers to stop beating up the victim and said he was going to call the police, the lawsuit says. When he took out his phone, the men doing the beating said they were cops.

Those officers, who were off-duty and are identified in the lawsuit as detectives Chris Heger and Mark D'Ambrosio, appeared "highly intoxicated" and approached Mejias, the suit says.

In the lawsuit Mejias says he went back to his car, but Healy Jr. tried to stop him from driving away. Mejias later bit three of Healy's fingers in self-defense, the lawsuit said.

Heger and D'Ambrosio ripped Mejias from the vehicle and continued to "beat him and kick him violently," the lawsuit indicates.

Mejias was brought to the hospital for treatment and was then arrested on assault charges. Officials said a grand jury declined to indict Mejias in April 2013.

Authorities, however, painted a different picture of the incident in 2012. Police reports indicated Mejias hit the off-duty officers while he was trying to defend his friend, who was being subdued by the detectives. Healy tried to take Mejias' keys so he couldn't get away from the officers, police said.

Those reports were not accurate and were intentionally "misleading" to "cover up the actions" of Heger, D'Ambrosio and Healy, who lied to the on-duty cops who responded to the fight, the lawsuit claims.

The on-duty officers involved in the alleged cover-up are Stephen Wilson, Samantha Pescatore and Sgt. Timothy Ackerley, the lawsuit said. Those officers were not involved in the physical altercation, according to the filings.

Mejias, meanwhile, is permanently disabled because of his injuries. The lawsuit says he suffered a concussion and has developed a seizure disorder. His eye socket was severely damaged and he cannot return to his job as a truck driver, the filings state.

The lawsuit also wants Healy's Tavern held accountable for allegedly serving alcohol to Heger and D'Ambrosio, who were already drunk. Judy Taboada, the attorney representing the tavern and Healy, did not return a call seeking comments on the lawsuit.

Jersey City spokeswoman Jennifer Morrill declined to comment on the case, but did stress the "all events precede (Mayor Steve Fulop's) administration."

Mejias' attorney Mario Blanch declined to discuss the specifics of the lawsuit, but said the "actions of the Jersey City Police Department were aggressive and heinous" and Mejias is looking forward to his day in court.

While the West New York attorney could not discuss how much money Mejias is seeking, filings indicate the lawsuit will not exceed $10 million.

Last month, the City Council approved a $45,000 settlement for a 2011 beating outside a house party. That settlement came as the department faces new allegations of police brutality after video surfaced of officers kicking an innocent man in the face after a police pursuit ended in a fiery crash.

*Caitlin Mota may be reached at cmota@jjournal.com. Follow her on Twitter @caitlin_mota-- .*

Registration on or use of this site constitutes acceptance of our **User Agreement** and **Privacy Policy**

© 2018 New Jersey On-Line LLC. All rights reserved (**About Us**).
The material on this site may not be reproduced, distributed, transmitted, cached or otherwise used, except with the prior
written permission of New Jersey On-Line LLC.

**Community Rules** apply to all content you upload or otherwise submit to this site.

▷ **Ad Choices**

HUDSON COUNTY

# $25K settlement to end case of alleged police brutality in Jersey City

Updated Apr 23;
Posted Apr 23



The council is expected to approve the settlement on
April 25. (Reena Rose Sibayan | The Jersey Journal)

8        **20**
shares

By **Terrence T. McDonald**, tmcdonald@jjournal.com
The Jersey Journal

JERSEY CITY — The City Council this week is scheduled to approve a $25,000
settlement for a man who alleges cops attacked him and falsely charged him
with crimes outside the Salem Lafayette housing complex two years ago.

Jeremy Rennick sued Jersey City, its police department and four officers in
federal court last year, claiming the March 19, 2016 arrest violated his civil
rights. His attorneys and a city spokeswoman declined to comment on the

1

Case 2:18-cv-09200-KM-MAH   Document 1   Filed 05/14/18   Page 34 of 35 PageID: 34

settlement proposal, which is up for council approval on Wednesday night.

Rennick's six-count lawsuit offers a drastically different version of events than the one described by authorities after his arrest.

Cops accused Rennick of punching one officer and dragging a second one with his car before being taken into custody. He was charged with aggravated assault on a police officer, eluding police and resisting arrest.

The lawsuit says surveillance video showed the cops' accounts to be untrue. Officers Humberto Balbosa and Kevin Geib ambushed Rennick and launched a "violent, unprovoked" attack after he stepped out of his car, according to the lawsuit.

A spokesman for the Hudson County Prosecutor's Office said the charges against Rennick were dismissed in October 2016. By that point, Rennick had already spent six months behind bars, according to his lawsuit.

Rennick also named Sgt. Thomas Broderick and Officer Chris Koszyk as defendants. A request for comment from the spokesman for Jersey City's police unions was not returned.

*Terrence T. McDonald may be reached at tmcdonald@jjournal.com. Follow him on Twitter @terrencemcd. Find The Jersey Journal on Facebook.*



Registration on or use of this site constitutes acceptance of our **User Agreement** and **Privacy Policy**

© 2018 New Jersey On-Line LLC. All rights reserved (**About Us**).
The material on this site may not be reproduced, distributed, transmitted, cached or otherwise used, except with the prior written permission of New Jersey On-Line LLC.

Jersey City man alleges police brutality in home

Advertisement

▶ WATCH NEWS 12 NOW

Log In    Change Region

WEATHER     TOP STORIES     TRAFFIC    CRIME    FOOD & FUN     SLIDESHOWS

# Jersey City man alleges police brutality in home

A Jersey City man says he believed he was becoming the victim of a home invasion, but the real trouble began when police arrived.

Mathias Bolton, 34, is accusing Jersey City police officers of brutality. He says plainclothes officers answered his 911 call and never identified themselves. He says they pushed him around and yelled at him.

Bolton says he fought back and ended up with bruises, open sores, a twisted ankle and cracked ribs.

He says uniformed officers arrived soon after and started beating him up as well.

Jersey City police and the mayor's office say they are standing by the police report filed by two of the officers, which says they identified themselves and that Bolton started the struggle.

Bolton was charged with aggravated assault on a police officer and resisting arrest. The charges were later downgraded. An internal investigation into the incident is under way.

HOME     WEATHER     TOP STORIES     TRAFFIC    CRIME    FOOD & FUN     SLIDESHOWS

**FOLLOW US**

Join Us On Facebook
Join Us On Twitter
Get our Apps
Go to Mobile Website
Sign Up for Our Newsletters

**OUR NETWORK**

Optimum
Newsday
News 12 Varsity
Newsday Cars
Newsday Homes

**HELPFUL LINKS**

Careers
Internships
Advertise
RSS
About Us
News Tips
Send Us Photos/Video
Newscasts

**MORE LINKS**

Site Map
Feedback
Terms of Service
Privacy Policy

All content © 2001 - 2018 Frankly and NEWS12. All Rights Reserved. For more information on this site, please read our **Privacy Policy**, **Terms of Service**, and **Ad Choices**.